**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CAROL SPACK, TABITHA SCHMIDT,

                                   Plaintiffs,                    1:17-CV-1335

          v.                                            (TJM/CFH)

TRANS WORLD ENTERTAINMENT
CORPORATION; RECORD TOWN, INC.,

                                   Defendants.

NATASHA ROPER,

                                   Plaintiff

          - v -

TRANS WORLD ENTERTAINMENT
CORPORATION, RECORD TOWN, INC.,

                                   Defendants.

**APPEARANCES:**                    **OF COUNSEL:**

Mashel Law LLC                 AMY CATHERINE BLANCHFIELD, ESQ.
500 Campus Drive, ste. 303       PETER DOUGLAS VALENZANO, ESQ.
Morganville, New Jersey 07751     STEPHEN T. MASHEL, ESQ.
Attorneys for Spack, Schmidt

Cooper, Erving Law Firm         CARLO ALEXANDRE C. DE OLIVERIA, ESQ.
39 North Pearl Street, 4th fl.
Albany, New York 12207
Attorneys for Spack, Schmidt

Shavitz Law Group, P.A.         MICHAEL J. PALITZ, ESQ.
830 3rd Avenue, 5th fl.
New York, New York 10022
Attorneys for Roper

Jackson Lewis P.C.              WILLIAM J. ANTHONY, ESQ.
677 Broadway, 9th fl.            CHRISTOPHER JOHN STEVES, ESQ.

Albany, New York 12110                    VINCENT E. POLSINELLI, ESQ.
Attorneys for defendants

**CHRISTIAN F. HUMMEL**
**United States Magistrate Judge**

## MEMORANDUM-DECISION & ORDER[1]

## I. Background

Presently pending before the Court is plaintiffs' Motion for Conditional Class

Certification pursuant to 29 U.S.C. § 216(b) wherein plaintiffs seek conditional

certification of this case as "a Fair Labor Standards Act ('FLSA') collective action and

[for the Court to] authorize Plaintiffs to send a notice of this lawsuit to all exempt-

classified Store Managers ('SMs')[2] who worked for Defendants at any time during the

Collective Action Period[.]"[3]  Dkt. No. 83, Dkt. No. 83-1 at 5.  Defendants opposed the

motion.  Dkt. No. 91.  Plaintiffs filed a reply.  Dkt. No. 95.  Defendants filed a surreply.

---

[1]  "Federal law permits 'a magistrate judge to hear and determine any pretrial matter pending before the court.'  28 U.S.C. § 636(b)(1)(A).  Although there are certain specified exceptions, one of which is 'a motion . . . to dismiss or to permit maintenance of a class action,' see id., a magistrate judge has jurisdiction over a motion seeking conditional class certification because it is only a "preliminary determination[ ] and [is] not dispositive."  Summa v. Hofstra Univ., 715 F. Supp. 2d 378, 383 (E.D.N.Y. 2010) (citing cases).  A motion for conditional certification "concerns a non-dispositive pretrial matter."  Id. at 384; see also Gregory v. Stewart's Shops Corp., No. 7:14-CV-33 (TJM/ATB), 2016 WL 8290648, at *1 (N.D.N.Y. July 8, 2016), report and recommendation adopted, 2016 WL 5409326 (N.D.N.Y. Sept. 28, 2016) ("A Magistrate Judge 'ha[s] the authority to grant conditional certification in the first instance because such a determination is a non-dispositive matter.'") (citations omitted)); Haas v. Verizon New York, Inc., No. 13-CV-813- (RA), 2015 WL 5785023, at *2 (S.D.N.Y. 2015) ("Unlike class certification actions brought under Rule 23, motions for conditional certification of FLSA collection actions qualify as pretrial matter' subject to clear error review."  Summa, 715 F. Supp. 2d at 383.

[2]  Plaintiffs provide that their Motion for Conditional Certification addresses only the Store Managers, and that they "also represent a collective and class action consisting of Senior Assistant Store Managers ('SAMs')" whose "Motion for Conditional Certification and Court Authorized Notice pursuant to 29 U.S.C. § 216(b) is forthcoming."  Dkt. No. 83-1 at 5 n.2.

[3]  Plaintiff Spack "also brings a class action under the New Jersey Wage and Hour Law and the Pennsylvania Minimum Wage Act.  See generally Dkt. No. 47.  These state law claims are not before the Court for review in the instant motion.

Dkt. No. 103.

Transworld Entertainment Corporation's corporate headquarters is located in Albany, New York.  Dkt. No. 83-1 at 10-11.  Transworld Entertainment Corporation operates over 200 retail stores in forty-three states. Dkt. No. 91 at 7.  The "majority" of stores are "For Your Entertainment" branded stores in shopping malls, but there are also "a number of freestanding stores, and vanity stores that sell unique products such a [sic] vinyl records." Id.  The stores "are broken up into 2 regions and 20 districts," with one regional manager per region and one district manager per district. Id.  All store locations have one store manager, who reports to the district manager. Id.  The district manager reports to a regional manager. Id.  The stores range from 200 square feet to 20,000 square feet, with one 50,000 square foot store. Id. at 8.  The stores range between $400,000 to $3.5 million per year in sales. Id.

Plaintiffs' FLSA claims seek a "class consisting of persons employed by Transworld Entertainment Corporation as SMs and SAMs[4] at any time three years prior to the filing of Spack's action through the entry of judgment." Dkt. No. 47 at 2.  The amended complaint also alleges that defendants Trans World Entertainment Corp. and Record Town, Inc. (collectively, "TWEC," where appropriate) violated the FLSA "by the improper use of the fluctuating work week method for the collective class consisting of SAMs." Dkt. No. 83-1 at 7.[5]  Plaintiffs seek court-facilitated notice – consisting of a

_____

[4]  The Court is of the understanding that this motion seeks collective certification only as to SAs. See n.1.

[5]  Plaintiffs also seek a propose class under the New Jersey Wage and Hour Law and Pennsylvania Minimum Wage Act for "all persons employed by TWEC as SMs in New Jersey and Pennsylvania." Dkt. No. 83-1 at 7.

3

proposed notice form, consent form, and "reminder postcard" – of the action to all potential opt-in plaintiffs "who were classified as exempt at any time since April 1, 2014." Dkt. No. 83-2 at 9, Exh. EE to GG.[6]

Defendants first contend that the Motion for Conditional Certification should be denied because plaintiffs seek conditional certification in a "piecemeal" fashion, seeking only to certify the SMs in the present motion, and indicating that they will seek to certify the SAMs at a future time. Dkt. No. 91 at 15. Second, defendants argue that "the putative collective is fatally overbroad" as it contains both exempt and non-exempt employees, and even if limited to SMs, the putative collective "asserts two separate claims (a misclassification claim and an off-the-clock claim) that have no factual nexus." Id. at 6. Third, defendants contend that plaintiffs have not demonstrated that they are similarly situated to the nationwide collective insofar as they "have not identified a nationwide policy or practice that justifies certification." Id. Finally, defendants argue that discovery has demonstrated that SMs "have drastically differing accounts of their

---

[6] Plaintiffs also seek from the Court an order directing TWEC

> to provide Plaintiffs with a computer-readable list of names, last known addresses, telephone numbers, work and personal e-mail addresses, work locations and dates of employment for all persons employed by Defendants as exempt SMs for one or more weeks at TWEC stores nationwide from April 1, 2014 to the date of the Court's Order granting this Motion.

Dkt. No. 83-2 at 10. Plaintiffs also request the Court to order TWEC to provide to plaintiffs "the last four digits of the Social Security Numbers for all SMs for whom a notice is returned undeliverable by U.S. Mail[.]" Id. Plaintiffs request a sixty-day notice period. Id. Additionally, plaintiffs seek an order (1) directing that notice "be distributed electronically by e-mail," (2) authorizing "the creation of a secure interactive website for the purpose of providing notice and facilitating SMs' ability to complete the consent to join process," and (3) requiring that "TWEC to post a copy of the notice in a conspicuous location in all of its stores for the entire notice period." Id. at 11.

job duties" and that the accounts given by plaintiffs "are rebutted not only by the job description itself and indisputable documentary evidence relating to the Plaintiffs' own employment histories, but also by 24 other SMs who have submitted sworn declarations." Dkt. No. 91 at 7.

## II. Legal Standards

Plaintiffs' present motion seeks conditional certification, the first step in the two-step approach of certifying a case as a collective action. See Dkt. No. 83. As this Court has set forth previously,

> The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred. See, e.g., Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1258-62 (11th Cir. 2008); Damassia v. Duane Reade, Inc., No. 04 Civ. 8819, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006) (Lynch, J.); Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.). The court may send this notice after plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.' . . . .

> At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs. The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice. See, e.g., Family Dollar, 551 F.3d at 1261; Hipp, 252 F.3d at 1218.

Boice v. M+W U.S, Inc., 1:14-CV-505 (GTS/CFH), 2016 WL 11476964, at *2 (N.D.N.Y.

Sept. 7, 2016) (quoting <u>Myers v. Hertz Corp.</u>, 624 F.3d 537, 555 (2d Cir. 2010), <u>cert. denied</u> 565 U.S. 930 (2011)).

Moreover,

> The FLSA does not define similarly situated; however, in assessing whether the potential plaintiff has met his or her burden, district courts in this circuit look to the (1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against notification to the class. A plaintiff's burden at the first step may be satisfied with substantial allegations of a factual nexus between named plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation.

<u>Boice v. M+W U.S., Inc.</u>, 130 F. Supp. 3d 677, 693 (N.D.N.Y. 2015) (internal citations and quotation marks omitted). "Thus, at this first step, a court is not to evaluate the merits." <u>Id.</u> (citing <u>Hoffmann-La Roche, Inc. v. Sperling</u>, 493 U.S. 165, 174 (1989)). The first step is generally considered "a modest factual showing that [the plaintiffs] and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" <u>Valerio v. RN Indust., LLC</u>, 314 F.R.D. 61, 65 (E.D.N.Y. 2016) (quoting <u>Myers</u>, 624 F.3d 555). Indeed, "courts have repeatedly stated that Section 216(b)'s 'similarly situated' requirement is 'considerably less stringent' than the requirements for class certification under Federal Rule of Civil Procedure 23, and 'that a party seeking to maintain a collective action need not meet the requirements of Rule 23 for class certification.'" <u>Id.</u> at 65 (quoting <u>Rodolico v. Unisys Corp.</u>, 199 F.R.D. 468, 481 (E.D.N.Y. 2001). "[A]lthough the burden on the plaintiff at this preliminary stage is modest, 'it is not nonexistent.'" <u>Boice</u>, 130 F. Supp. 3d at 694 (quoting <u>Khan v. Airport</u>

6

<u>Mgmt. Servs.</u>, LLC, No. 10-CV-7735, 2011 WL 5597371, at *5 (S.D.N.Y. Nov. 16, 2011)).

## III. Analysis

### A. Heightened Standard

Citing to <u>Korenblum v. Citigroup, Inc.</u>, 195 F. Supp. 3d 475, 481-82 (S.D.N.Y. 2016) and <u>Enico Motor Cars v. Navaro</u>, __US__, 138 S. Ct. 1134, 1142 (2018), defendants argue that the Court should apply a heightened standard, the "modest plus" standard, because "significant" discovery has occurred. Dkt. No. 91 at 13, Dkt. No. 103 at 8. According to defendants, plaintiffs have held two Rule 30(b)(6) depositions of Jeffery Davis and "exchanged thousands of pages of documents." <u>Id.</u> at 13-14, Dkt. No. 91-1 at 2 ¶2. Plaintiffs argue that "only a couple thousand pages of documents exchanged, and only one witness deposition, a 30(b)(6) deposition taken on two different dates" is "relatively scant" and does not raise the bar to the modest plus standard. Dkt. No. 95 at 4. Plaintiffs contend that a modest plus standard has been applied in cases where fact discovery is complete, which is not the case here. Dkt. No. 95 at 4. In their sur-reply, defendants reiterate that plaintiffs are not similarly situated to the putative collective, the putative collective is overbroad, and that heightened scrutiny is appropriate. Dkt. No. 103.

The modest plus standard "looks beyond the pleadings and affidavits submitted by Plaintiffs and will consider the evidence submitted by both parties, albeit with an understanding 'that the body of evidence is necessarily incomplete.'" <u>Korenblum</u>, 195

F. Supp.3d at 482 (quoting Creely v. HCR ManorCare, Inc., 795 F. Supp.2d 819, 826 (N.D. Ohio 2011)). The modest plus standard has been described aptly as a "'sliding scale,' with progressively more security applied as more evidence enters the record.'" Gaston v. Valley Nat'l Bancorp., 17-CV-1886, 2018 WL 4158407, at *2 (E.D.N.Y. Aug. 30, 2018). Defendants note that Encino Motor Cars, 138 S.Ct at 1142, holds "that FLSA exemptions are no longer to be construed narrowly against employers and, instead, must be given a fair reading," and appear to suggest that the "fair reading" standard should be considered in some form at the conditional certification stage. Dkt. No. 103 at 8-9 (also citing Munoz-Gonzalez v. D.L.C. Limosine Serv., 904 F.3d 208, 216-17 (2d Cir. 2018)).

Defendants urge the Court to consider Korenblu v. CitiGroup, Inc. and Brown v. Barnes & Noble, Inc., 1:16-CV-07333 (RA)(KHP), 2018 WL 3105068 (S.D.N.Y. June 25, 2018), where the Southern District of New York applied heightened scrutiny to motions for conditional certification. Dkt. No. 104 at 11-12. In Korenblum, the Southern District applied the modest plus standard to a conditional certification motion "made after some, but not all, discovery has occurred[.]" 195 F. Supp.3d at 480. In Korenblum, "discovery with respect to conditional certification ha[d] been completed[.]" Id. at 482. The Southern District held, "neither law nor logic supports rigidly applying the same standard of review at all points prior to discovery's close[.]" Id. at 481-82. In Brown, the Southern District defined the discovery that had occurred as "substantial" and noted that the plaintiffs stated that "no additional discovery is needed on common policies that purportedly violate the FLSA." 2018 WL 3105068, at *7.

Insofar as defendants direct the Court to <u>Encino</u> and its progeny, the Court does not disagree that <u>Encino</u> makes clear that exemptions to the FLSA are to be construed "fairly"; however, while recognizing this pronouncement, the Court is not convinced that <u>Encino</u>'s construction of exemptions changes substantially the trial court's role in assessing the appropriateness of conditional certification. <u>See</u> <u>generally</u> <u>Brown</u>, 2018 WL 3105068, at *5. The Court acknowledges <u>Encino</u>'s holding, but finds it does not substantially change the Court's analysis at this stage in the specific case presently before the Court. The Court acknowledges the "sliding scale" to be applied by courts in assessing conditional certification motions, and will not "ignore evidence," dkt. no. 103 at 8; however, to the extend defendants contend that declarations they submitted from former employees of defendants demonstrates that SMs job duties widely varied, "'at this initial stage, the Court does not resolve these sorts of factual disputes.'" <u>Boice</u>, 2016 WL 11476964, at *17 (citing <u>Iriarte v. Café 71, Inc.</u>, 15 Civ. 3217, 2015 WL 8900875, at *4 (S.D.N.Y. Dec. 11, 2015) (additional citation omitted)).

"Although the Court acknowledges that there may be circumstances that could arise where the depth of discovery warrants the application of [a] more scrutinizing standard . . . such is not the case here." <u>Boice</u>, 2016 WL 11476964, at *3. Although the exchanging of a "couple thousand" pages of documents is not insignificant, only one witness has been deposed, albeit on two occasions. This depth of discovery, alone, is not of the significance which would warrant application of the modest plus standard. <u>See</u>, <u>e.g.</u>, <u>Griffin v. Aldi, Inc.</u>, 16-CV-354 (LEK/ATB), 2017 WL 1397320, at *3-4 (N.D.N.Y. Feb. 22, 2017) (acknowledging application of modest plus standard where

substantial discovery occurred or has been completed, but noting that, "unlike in Korenblum, "the parties conducted three months of limited discovery with respect to certification issues," and, thus, "discovery with respect ot facts relevant to conditional certification has clearly not been completed" despite the fact that defendants had deposed three of the named plaintiffs); Gaston, 2018 WL 4158407, at *2 (denying application of modest plus standard where "very little discovery has taken place, with only three witnesses deposed" and "nothing in the depositions 'inconsistent with the assertions in the affidavits that [nonexempt work] was a tiny percentage of their time.'"). Here, although significant discovery have been exchanged, discovery is still in its early stages, and a substantial amount of discovery has yet to be produced.[7]  Thus, this case is less comparable to those cases where discovery was complete or largely complete, such as Korenblum and Brown, and closer to those wherein the courts declined to raise the modest standard due to discovery exchange being fairly minimal or otherwise incomplete. See Griffin, 2017 WL 1397320, at *3-4; Gaston, 2018 WL 4158407, at *2. Accordingly, the Court declines to apply the heightened modest plus standard to plaintiffs' motion for conditional certification.

## B.  Similarly Situated

### 1.  Is Putative Collective Overbroad?

Defendants urge the Court to deny "outright" the conditional certification motion

---

[7]  The Court's understanding of the extent of discovery exchanged is based on what has been disclosed in the instant motion.  Parties have not informed the Court whether additional discovery has since occurred.

because plaintiffs seek "piecemeal certification" of the collective insofar as the present motion seeks certification of the SMs and plaintiffs seek to later certify the SAMs. Dkt. No. 91 at 6, 15, 26. Defendants contend that this approach demonstrates that plaintiffs' "definition of the nationwide collective is fatally overbroad" as it is made up of "both exempt and nonexempt employees." Id. at 14-15. Defendants contend that "[c]ourts within this Circuit have routinely rejected attempts to certify overbroad collectives containing both exempt and non-exempt employees." Id. at 15. In response, plaintiffs argue that the putative class is not overbroad because "both distinct classes are subject to TWEC's unlawful common policy of not paying overtime at a rate of 1.5 times their regular rate, and both were denied compensation for off-the-clock work." Dkt. No. 95 at 5.

Plaintiffs direct the Court to Kim v. 511 E. 5th St., LLC, 985 F. Supp. 2d 439 (S.D.N.Y. 2013), which they argue holds that the Court is not precluded from certifying a collective made of both exempt and nonexempt employees. Dkt. No. 95 at 6. In Kim, as relevant here, the defendants contended that the action should not be conditionally certified because the proposed collective included exempt and non exempt employees. Kim, 985 F. Supp. 2d at 450. The Kim Court distinguished Romero v. H.B. Auto. Grp., Inc., No. 11 Civ. 386 (CM), 2012 WL 1514810 (S.D.N.Y. May 1, 2012), which the Kim defendants cited to support their argument that the collective should not be certified where there were both exempt and nonexempt employees. Id. The Kim Court noted that, unlike in Romero, the plaintiffs in the case before the court sought conditional certification prior to discovery, and that the question whether the plaintiff was similarly

situated to other employees or whether he had "executive responsibilities" "must be sorted out after some discovery, not now." Id. at 450-51. Further, the Kim Court noted that there were "no complicated issues" regarding the differing job responsibilities "at least to the extent that Kim seeks to bring this action on behalf of kitchen staff members" because the "only employee whose job responsibilities potentially are in question is Kim himself" and that further discovery would reveal whether plaintiff Kim was similarly situated to other kitchen employees. Id.

Among other cases, defendants cite Romero and Diaz v. Electronics Boutique of Am., Inc., Diaz v. Electronics Boutique of Am., Inc., 2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 17, 2005). In Romero, the Court denied conditional certification to a collective of

> Current and former employees of Defendants who perform any work in any of Defendants' locations as non-managerial employees who give consent to file a cause of action to recover overtime compensation . . . as well as to recover the differences between the amount of wages actually paid to them and the statutorily minimum amount due.

Id. at *13. The Court recognized that

> including these potentially exempt employees into the collective action would . . . "inject into the case an additional legal question bearing on liability.'" In other words, the parties would first need to litigate whether Plaintiff and the putative opt-ins were misclassified – i.e., Defendants' liability for overtime wages would need to be established – whereas the non-exempt employees need only determine the amount of relief – if any – to which they are entitled. Thus, because the putative opt-ins in the proposed collective action are not similarly situated, the collective action cannot be conditionally certified as it currently stands.

Id. However, "Romero addressed certification of a collective action at the second

12

stage, after discovery had taken place." Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 161 (S.D.N.Y. 2014).

In Diaz, the Western District of New York denied the plaintiffs' FLSA § 216(b) conditional certification motion because, among other reasons, the proposed collective included both store managers, who were exempt employees, and assistant store managers, who were nonexempt employees. 2005 U.S. Dist. LEXIS 30382. In denying the motion to conditionally certify, the Court noted (1) that the exempt store manager's claims alleged that the defendant "avoided paying him overtime wages by willfully misclassifying him as exempt although his duties consisted primarily of nonexempt tasks" which "would involve an analysis of daily duties and responsibilities and the amount of time spent on each"; and (2) the nonexempt employees' claims, which centered around the allegations that they "were not compensated for overtime hours worked" and that defendant had a policy which required the employees to work additional hours without "adequate" overtime compensation, "will involve an examination of hours worked, payroll records, and [the defendant]'s knowledge and/or permission of the alleged overtime hours worked." Id. at *6, *12. Thus, the Court determined that the exempt and nonexempt plaintiffs and potential opt-in plaintiffs were "not similarly situated to one another for no factual nexus exists between their situations." Id. at *12.

In the present motion, plaintiffs seek conditional certification only as to the SMs, who are defined by defendants as exempt, but indicate that they seek to certify the SAMs, who are defined as nonexempt, in the future. Defendants argue that this

approach is "an attempt to avoid this glaring deficiency" and assert that plaintiffs "should not be permitted to make an end run around the fact that their own definition of the nationwide collective is fatally overbroad by making multiple, piecemeal motions for conditional certification." Dkt. No. 91 at 15. Thus, it must be determined whether the fact that plaintiffs intend for the putative collective to include both exempt SMs and nonexempt SAMs precludes this Court from assessing whether plaintiffs have demonstrated that the SMs are similarly situated.

Plaintiffs contend that any concern that the Court may have with the proposed class being overbroad "can be remedied by dividing the SMs and ASMs into subclasses . . ." Dkt. No. 95 at 6. At this juncture, the Court declines to determine whether significant differences exist such that dividing the putative collective for notice purposes would be a "fruitless exercise," nor would it be appropriate for the Court to make such a determination. As discussed in detail above, although some discovery has taken place – one 30(b)(6) witness has been deposed and approximately two thousand pages of documents have been exchanged – the matter is still within the first stage of the certification process, where the standard for conditional certification is less strict. As such, at this first stage, the Court declines to deny the motion certifying the SMs solely on the ground that it seeks to certify only as to the exempt SMs, even where the defined collective includes both exempt and nonexempt employees and plaintiffs express a desire to later certify the nonexempt SAMs.

The Court disagrees with the rationale of the Diaz Court insofar as it declined to conditionally certify a class made up of both exempt and nonexempt employees; any

14

concerns regarding an individualized analysis between the two classes of employees can be addressed at the second stage of the analysis.  See, e.g., Cohen v. Gerson Lehrman Grp., Inc., 686 F. Supp.2d 317, 329-31(S.D.N.Y. 2010) (acknowledging the Diaz holding and similar holdings from courts in other Circuits, but recognizing that "courts in this District weighing motions for preliminary FLSA certification have rejected the reasoning of this line of cases, declining to "wade into a thicket of competing factual assertions at this preliminary stage," and granting conditional certification.).  Should additional discovery demonstrate the existence of significant differences between the SMS or between the SMs and SAMs, the Court can choose to deny any future motion seeking conditional collective certification of the SAMs, or, at the second stage of the analysis, decertify the collective.  Cunningham v. Electronic Data Systems Corp., 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010). ("Because courts retain the ability to reevaluate whether the plaintiffs are similarly situated at the second stage, the first-stage determination is merely 'preliminary' and subject to reversal, explaining why the plaintiff's first-stage burden is low."); see also Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 369 (S.D.N.Y. 2007) ("If the fruits of full discovery reveal that plaintiffs are not, in fact, "similarly situated" to defendants' other employees, or that only employees who worked at the same facility or engaged in a particular job are 'similarly situated,' I may later decertify the class or divide it into subclasses, if appropriate.").

Accordingly, the Court declines at this time to deny conditional certification of SMs based on the fact that plaintiffs seek "piecemeal" certification of SMs..

## 2. Off-the-Clock Claim

Defendants contend that any potential "sub-collective consisting of only SMs is still overbroad." Dkt. No. 91 at 15. More specifically, defendants attest that plaintiffs cannot assert an off-the-clock claim on behalf of SMs, who are nonexempt employees. Id. at 15, 26. Defendants contend that plaintiffs are conflating a misclassification claim, which defendants contend applies to exempt employees, with an off-the-clock claim, which defendants believe applies to nonexempt employees. Id. at 26. Defendants argue that because it is undisputed that the SMs were classified as exempt, plaintiffs cannot assert an off-the-clock claim on their behalf. Id. Thus, defendants suggest that "there is no need to address an 'off-the-clock' claim on behalf of SMs unless and until the misclassification claim addressed above is resolved in Plaintiffs' favor. Given this reality, sending notice of such a claim to all SMs nationwide before the misclassification has been resolved is premature." Id. at 27.

Plaintiffs argue in response that defendants make an

> illogical "cart before the horse" argument by claiming SMs
> and SAMs cannot share a common nexus for collective
> action purposes when it comes to their "off-the-clock" claims
> because TWEC characterized SMs as "salaried exempt" and
> SAMs as "salaried non-exempt" employees. Once discovery
> is allowed to conclusively establish SMs were misclassified
> as exempt, both SMs and SAMs will then be "similarly
> situated" and eligible for overtime pay."

Dkt. No. 95 at 7.

Plaintiffs' response fails to address fully the nuances of defendants' argument. Dkt. No. 95 at 7. Defendants are contending that it is not just that plaintiffs seek to

certify a class of both exempt and nonexempt employees, but that plaintiffs seek to assert an off-the-clock claim for exempt employees when the issue of whether they were misclassified has not yet been decided. Dkt. No. 91 at 26-27. The Court agrees with defendants that plaintiffs' attempt to certify off-the-clock claims for SMs is, at this point, premature.

In Diaz, the Court was concerned with certifying the off-the-clock claims as they were "too individualized to warrant collective treatment" as it would require the Court to assess when the plaintiffs were "scheduled to work, when he actually worked, whether he was paid for such, and whether [his timesheets were altered] . . . [and] would have to conduct the same inquiry as to each other class member." 2005 U.S. Dist. LEXIS 30382, at *5. Further, the Diaz Court concluded that the exempt plaintiff's misclassification claim was "[f]actually and legally different from" the nonexempt plaintiff's off-the-clock claim and "warrant[s] different defenses from [the defendant]." Id. at *7. Here, the Court is less concerned with the individualized nature of the inquiry or the fact that misclassification claims may require different analyses or defenses than the off-the-clock claims. What is concerning to the Court, however, is, as defendants raise, the "conflation" involved in applying both misclassification and off-the-clock claims to SMs, exempt employees, before a determination has been made about whether SMs were improperly classified. Much as the Court held in Arceneaus v. Fitness Connection Option Holdings, LLC, 4:16-CV-3418, 2017 WL 5749608, at *5 n.10 (S.D. Tex. Nov. 28, 2017), a case cited by defendants, plaintiffs' off-the-clock claim for SMs is "not pertinent" at the conditional certification stage. Dkt. No. 91 at 26-27.

17

As defendants point out, plaintiffs have failed to provide any case support where a court conditionally certified an off-the-clock claim for employees categorized as exempt prior to making a determination on the misclassification claim. Dkt. No. 91 at 27; Dkt. No. 83-2 at 6-7 (citing Strohl v. Brite Adventure Ctr., Inc., No. 08 CV 259, 2010 WL 3236778 (E.D.N.Y. Aug. 13, 2010) (reviewing off-the-clock claims in violation of the FMLA, not FLSA, where there was no question whether the plaintiff was exempt/nonexempt); Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706 (2d Cir. 2001) (reviewing FMLA claim where there was no question of "exempt" vs "nonexempt" for FLSA purposes); Chao v. Gotham Registry, Inc., 514 F.3d 280, 288 (2d Cir. 2008) (reviewing off-the-clock claims of nonexempt employees); Dkt. No. 95 at 7. Accordingly, for all these reasons, the Court denies as premature plaintiffs' motion for conditional certification insofar as it relates to off-the-clock claims for SMs.

### 3. Misclassification Claim

The Court finds that plaintiffs have met their "minimal" burden of demonstrating that plaintiffs and the potential class of SMs are similarly situated for purposes of their misclassification claim. Plaintiffs contend that defendants had a policy or practice of failing to pay overtime at a rate of one and one-half times their regular rate of pay for hours worked in excess of forty (40) hours during a workweek." Dkt. No. 47 at 2; Dkt. No. 83-1 at 11. Further, plaintiffs argue that SMs perform "the same non-exempt work as the hourly associates who are eligible for overtime pay," have minimal authority to make unilateral decisions involving hiring, firing, and discipline, but were misclassified

18

as exempt employees not entitled to overtime pay. Dkt. No. 83-2 at 5.

In addition to the affidavits from the named plaintiffs, plaintiffs submit declarations from twelve opt-in plaintiffs who indicate that they were SMs who were required to work greater than forty hours per week. Dkt. No. 83-1 at 11 n.4. Plaintiffs contend that the policy of requiring SMs to work more than forty hours per week without being paid overtime applies across all of defendants' stores. Id. at 12. Plaintiffs argue that plaintiffs and the potential collective are similarly situated because they have the same compensation policy, perform "the same non-exempt duties including assisting customers, stocking shelves, setting up floor sets with products, performing customer service, ringing registers, doing merchandising, and unloading products onto the sales floor." Id. at 12-13.

Defendants argue that the misclassification claim should not be conditionally certified because "the fact that SMs were classified as exempt, had the same job description, and were subject to the same policies. Even if true, this is insufficient to establish the existence of an actionable common policy for conditional certification purposes." Dkt. No. 91 at 16.

Although defendants contend that several courts have declined to grant conditional certification where a plaintiff alleges that a group of employees were misclassified as exempt, concluding that the allegation is insufficient to prove a common policy, plan or practice sufficient to demonstrate the collective was similarly situated for purposes § of 216(b), plaintiffs' case falls closer to those cases wherein conditional certification has been granted. Defendants rely in part on Jenkins v. TJX

Companies Inc., 853 F. Supp. 2d 317 (E.D.N.Y. 2012). In Jenkins, the Court cited

Kahn v. Airport Mgmt. Svcs., LLC, No. 10 Civ. 7735 (NRB), 2011 WL 5597371

(S.D.N.Y. Nov. 16, 2011), which concluded that, where the defendant was contending

that, to establish commonality, it was not sufficient for the plaintiff to assert that he was

not given duties in accordance with the defendants' job policies or that the proposed

class operated under the same job description; instead, the plaintiff had to demonstrate

that he was similarly situated "with respect to the claim that they were required to

perform nonmanagerial job duties in contravention of the formal job description."

Jenkins, at 324 (citing Kahn 2011 WL 5597371, at *4). The Jenkins Court determined

that the plaintiff

> has failed to provide any factual support for the contention
> that other ASMS at [defendants'] stores in New York, let
> alone nationwide, primarily performed non-exempt tasks.
> Rather, the Plaintiff offers only his own deposition testimony
> describing his personal circumstances at the stores at which
> he worked, and one page from a consultant's report without
> any explanation as to its context or relevance.

Id. Thus, upon concluding that the plaintiff "has not provided the Court with anything

other than conclusory allegations and his own deposition testimony to support his

assertion that other [] ASMs also primarily performed non-exempt job duties," the Court

denied the plaintiff's request for conditional certification. Id. at 324-35.

The Court agrees concludes that the concerns presented by the cases they cite

are not so present here. Plaintiffs have submitted twelve declarations from opt-in

plaintiffs who they allege to be similarly situated to themselves and the putative

collective.[8] The named plaintiffs and twelve opt-in plaintiffs "worked in twenty-four store locations in eleven states, including New Mexico, West Virginia, Maryland, Oklahoma, Tennessee, New York, Florida, Michigan, Indiana, Pennsylvania and New Jersey." Dkt. No 83-1 at 8. The named plaintiffs and opt-in plaintiffs allege that they worked, on average, between fifty to sixty hours per week, and as many as seventy hours per week, but were not paid for any hours worked over forty per week. See Dkt. No. 83-16 at 8, 14; Dkt. No. 83-17 at 2, 8, 14; Dkt. No. 83-18 at 2, 7, 12; Dkt. No. 83-31 at 2, 8, 13l Dkt. No. 83-32 at 13. Further, all opt-in plaintiffs contend that they spent an average of 85-95% of their time performing nonmanagerial, nonexempt tasks such as organizing stock, helping customers, or cleaning. Id. Similarly, the opt-in plaintiffs all declared that they did not have final authority to hire or fire full-time employees, and many did not have final disciplinary authority. Id. All declared that they were aware of at least one other SM who experienced similar working conditions. See id.

Defendants point out that there are differences with respect to these plaintiffs' reported job duties, and contend that discovery has revealed that plaintiffs are "not similarly situated to each other, much less to the members of the putative collective, and presents twenty-four declarations from other SMs who indicate that both plaintiffs and other SMs performed "exempt managerial duties." Dkt. No. 91 at 19, 23.

---

[8] Plaintiffs' motion states that they submit declarations from thirteen opt-in plaintiffs. Dkt. No. 83-2 at 8. Attorney Mashal's declaration references declarations from Thomas Orwat, Calvin Sanders, Mark Vignoli, Adam Thompson, Christopher Adkins, Richard Brushett, Joshua Spurbeck, George Davidson, Regina Dierckman, Rachel Nault, Roy McCloud, Kelly Paquette, and Christopehre Atkins. Dkt. No. 83-3 at 5. However, review of the declarations reveal that there is no "Christopehre Atkins," as Exh QQ is supplemental declaration from Christopher Adkins, whose original declaration is found at Exh. H. Dkt. No. 83-17 at 8-12. Thus, it appears plaintiffs count of thirteen opt-in plaintiffs is erroneous, as they have submitted declarations from twelve opt-in plaintiffs.

Defendants further contend that the named plaintiffs acknowledged during their depositions that their duties "differed drastically from those described from other SMs." Dkt. No. 103 at 5. Although defendants submit several declarations from other SMs and float many arguments contending that the plaintiffs' responsibilities were so varied such that they cannot be deemed similarly situated, the undersigned refers to the discussion, supra, wherein the Court determined that the heightened modest plus standard did not apply. Thus, plaintiffs need only meet their "modest" burden of demonstrating that the plaintiffs and opt-ins are similarly situated. "[C]ourts in this Circuit regularly conclude that [competing] declarations do not undermine the plaintiff's showing in the first stage of the conditional certification process." Winfield v. Citibank, N.A., 843 F. Supp. 2d 397, 407 n.6 (S.D.N.Y. 2012) (citation omitted) class decertified, 93 F. Supp. 3d 279 (S.D.N.Y. 2015). "[T]o balance the parties' competing affidavits at this stage would require us to determine the facts, determine the credibility of deponents, and resolve legal contentions, all of which we were directed to avoid." Boice, 130 F. Supp.3d at 694 (quoting Ruggles v. WellPoint, Inc., 591 F. Supp.2d 150, 161 (N.D.N.Y. 2008)). Indeed, "[w]hether Plaintiff and the opt-in plaintiffs are similarly situated is an issue that should be addressed through a motion for decertification, which is the second step of the collective certification process." Coons v. Family Counseling Ctr. of Fulton Cty., Inc., No. 1:17-CV-439 (TJM/CFH), 2018 WL 4026733, at *2 (N.D.N.Y. Aug. 23, 2018) (citing Pollock v. Legends Hosp., LLC, No. 12 Civ. 8334 (KBF), 2013 WL 3863864, at *2 (S.D.N.Y. July 25, 2013)).

The named plaintiffs and twelve opt-in SMs indicated that they worked more than

forty hours a week performing almost entirely nonexempt work, but were not paid for hours worked over forty hours per week, that they had minimal managerial responsibilities, and little independent hiring, firing, and disciplinary authority. The undersigned concludes that these declarations, at this initial stage, "are sufficient to 'find some identifiable factual nexus which binds the named plaintiff[ ] and potential class members together as victims' of a particular practice,' and therefore provide a sufficient basis for conditional collective certification." Coons, 2018 WL 4026733, at *2 (quoting Alvarez v. Schnipper Restaurants LLC, No. 16 Civ. 5779 (ER), 2017 WL 6375793, at *2 (S.D.N.Y. Dec. 12, 2017) (additional internal citation and quotation marks omitted). As, it is not appropriate for the Court at this stage to resolve inconsistencies between affidavits or to make credibility determinations and the undersigned concludes that the declarations satisfy plaintiffs' "modest factual showing" that plaintiffs, and potential opt-in plaintiffs, "together were victims of a common policy or plan that violated the law," Myers, 624 F.3d at 555, the Court grants plaintiffs' motion for conditional certification of plaintiffs' misclassification claim.

## C. Production of Contact Information

Plaintiffs request the Court order defendants to produce a "computer-readable list" of all names, last known addresses, work e-mail addresses, personal e-mail addresses, work locations, and dates of employment for all SMS employed for one or

more weeks at TWEC stores nationwide form April 1, 2014 to the date of this Order.[9] Dkt. No. 83-2 at 9. For any notices returned undeliverable, plaintiffs request the Court order defendants to produce the last four digits of those SMs' social security numbers. Id. at 10. Plaintiffs request a notice period of sixty days. Id. at 10-11. Defendants do not address these requests.

The Court grants plaintiffs' request insofar as they seek the (1) names, (2) last known addresses, (3) telephone numbers, (4) work e-mail addresses, (5) work locations, and (6) dates of employment for all individuals employed as SMs for at least one week, running from April 1, 2014 until the date of this Memorandum-Decision & Order. Benavides v. Serenity Spa NY Inc., 166 F. Supp. 3d 474, 488 (S.D.N.Y. 2016) ("Courts in this District commonly grant requests for the production of names, mailing addresses, email addresses, telephone numbers, and dates of employment in connection with the conditional certification of a FLSA collective action.").

The Court declines to order defendants to provide personal e-mail addresses or the last four-digits of potential opt-in plaintiffs' social security numbers. Given the "'inherently private' nature of the last four digits of potential plaintiffs' social security numbers, the Court declines to order defendants to produce this information as plaintiffs have failed to demonstrate that such information is necessary to contact the

---

[9] Plaintiffs provided that "plaintiff and defendants entered into a tolling agreement tolling the FLSA and state wage and hour claims of Plaintiff Roper and SMs. The SMs' FLSA claims are tolled from April 1, 2014 to the present." Dkt. No. 83-1 at 5. Plaintiffs do not indicate whether plaintiffs Roper and Spack are part of this tolling agreement. Id. Defendants do not address this proposed time period.

potential plaintiffs." Boice, 2016 WL 11476964, at *25 (quoting Colozzi, 595 F. Supp.2d
at 210 and citing Delaney v. Geisha NYC, LLC, 261 F.R.D. 55, 60 (S.D.N.Y. 2008));
Guan Ming Lin v. Benihana Nat'l Corp., 10 Civ. 1335 (VM) (JCF), 2011 U.S. Dist. LEXIS
58587, at *34-35 (S.D.N.Y. Apr. 20, 2011) .  Similarly, plaintiffs have also not
demonstrated the need for potential opt-in plaintiffs' personal e-mail addresses, which
the Court declines to order defendants to provide, at this time.  Personal e-mail
addresses, generally, are not publically-available like home addresses and telephone
numbers often are.  Accordingly, plaintiffs' requests for (1) personal e-mail addresses,
and (2) the last four digits of the social security numbers of any potential plaintiff whose
mail is returned are denied.[10] Plaintiffs' request for the names, last known addresses,
work e-mail addresses, telephone numbers, and dates and locations of employment is
granted.

### D. Notice and Consent Form.

### 1. Proposed Notice & Consent forms[11]

---

[10]  Plaintiffs may seek to renew their request for the last four digits of social security numbers if
plaintiffs find that a significant number of notices are returned as undeliverable.  See, e.g., Delaney v.
Geisha NYC, LLC, 261 F.R.D. 55, 60 (S.D.N.Y. 2009) ("The Court does not see the need to direct the
disclosure of [S]ocial [S]ecurity numbers at this stage. If Plaintiffs find that a large number of notices are
returned as undeliverable, the Court can consider the matter at that time."); Garcia v. Spectrum of
Creations, Inc., 102 F. Supp. 3d 541, 551 (S.D.N.Y. 2015) (denying "production of Social Security
numbers . . . for the purpose of using a 'skip trace' service to contact employees whose mailings are
returned as undeliverable," finding that "it is premature to require such information for the entire group
when it is necessary only for what may be a small subset who cannot be reached" and providing that "this
issue should revisited" when there is more information about "the efficacy of whatever measures are
chosen to reach the similarly situated employees").

[11]  Plaintiffs' exhibits have not been uploaded to the Court's docket in an easily-accessible order.
For ease of reference, plaintiffs' proposed notice form is found at Dkt. No. 83-30 at 2-4 (Exh. EE), the
proposed consent form is found at Dkt. No. 83-30 at 6 (Exh. FF), and the proposed reminder is found at

Defendants argue that plaintiffs' proposed notice is "overly solicitous, one-sided, and fails to provide Defendants' position in the lawsuit or fully apprise potential opt-ins of their obligations." Dkt. No. 91 at 29. First, defendants argue that the proposed notice form improperly advises potential opt-in plaintiffs of the "benefits of participating in the collective action, but does not discuss the potential downsides" and that the notice should inform potential plaintiffs "of their discovery obligations, including the fact that they could be deposed or required to participate in the written discovery process, and could be ordered to testify at trial." Id. at 29-30. Second, defendants contend that potential plaintiffs "need to be aware of the potential that they will have to pay litigation costs if they do not prevail in this action." Id. at 30. Third, defendants argue that the notice should contain contact information for defense counsel. Id. at 30. Finally, defendants request, that, should the Court grant plaintiffs' conditional certification, "parties be given three weeks from the issuance of any order granting certification to meet-and-concern about the terms of any notice." Dkt. No. 91 at 29.

### a. Meet and Confer

The Court declines to order a meet-and-confer as the Court has significant doubt that a meet-and-confer would result in parties agreeing to a notice form without further Court intervention. Furthermore, defendants had every opportunity, in opposing plaintiffs' motion for conditional certification, to submit a competing proposed notice form. Regardless, the Court has considered defendants' objections to plaintiffs'

---

Dkt. No. 83-30 at 8 (Exh. GG).

proposed notice and it is entirely capable of crafting a notice form that is fair, well-balanced, not "overly-solicitous," and "fully apprise[s] potential opt-ins of their obligations." Dkt. No. 91 at 29.

### b. Defendants' Specific Objections

As to the contents of the notice and consent form,

> Neither the FLSA, nor other courts, have specifically outlined what form a court-authorized notice should take or what provisions the notice should contain. Moore, 276 F.R.D. at 58 (quoting Fasanelli, 516 F. Supp. 2d at 323). However, it is well-established that "[c]ourts have broad discretion to craft appropriate notices that effectuate the overarching policies of the collective suit provisions and provide employees with accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."

Cabrera v. Stephens, No. 16-CV-3234 (ADS)(SIL), 2017 WL 4326511, at *8 (E.D.N.Y. Sept. 28, 2017) (quoting Hernandez v. Immortal Rise, Inc., 11-cv-4360, 2012 WL 4369746, at *6 (E.D.N.Y. Sept. 24, 2012) (internal quotation omitted)).

### i. Defense Counsel Contact Information

Insofar as defendants request that the notice contain contact information for defense counsel, the Court observes that courts within this Circuit have come out both ways on this request. See Benavides, 166 F. Supp.3d at 486 ("Courts in this District are split on this issue.") (citation omitted). Some courts have declined to require the notice to contain contact information for defense counsel, concluding that such

27

information is not "required to be fair" and "is likely to create confusion rendering distribution or collection of consent forms less effective." See Cabrera, 2017 WL 4326511, at *8 (citing Chhab v. Darden Restaurants, Inc., 11 CIV. 8345, 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013); see also Cryer v. Intersolutions, Inc., No. 06-2032 (EGS), 2007 WL 1053214, at *3 (D.D.C. Apr. 7, 2007) (holding that including contact information for defense counsel is not required and allows for potential for confusion). However, others have held that provision of defense counsel's contact information is "routine" as it "is necessary to afford employees the opportunity to communicate with defense counsel." Guo v. Tommy's Sushi, No. 14 Civ. 3964 (PAE), 2014 WL 5314822, at *4 (S.D.N.Y. Oct. 16, 2014) (citing cases) (internal quotation marks, citation, and alteration omitted).

The undersigned believes that any concern with confusion and the proper location to which opt-in plaintiffs are to send consent forms can be largely remedied by requiring that contact information for defense counsel be "placed in a separate heading entitled 'Attorneys for Defendants.'" Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp.2d 445, 451 (S.D.N.Y. 2011) (citing Cryer, 2007 WL 1053214, at *3). Accordingly, th Court modifies the notice form to include contact information for defense counsel.

### ii. Discovery Obligations of Potential Plaintiffs

Insofar as defendant raises concerns that the proposed notice fails to properly apprise potential plaintiffs of their discovery obligations, the Court agrees. See Bah v.

<u>Shoe Mania, Inc.</u>, No. 08 Civ. 9380 (LTS) (AJP), 2009 WL 1357223, at *3-4 (S.D.N.Y.

May 13, 2009) (amending notice "to inform the potential plaintiffs that, if they opt in,

they may be asked to (1) appear for depositions; (2) respond to written discovery;

(3) testify at trial"); <u>Shajan v. Barolo,</u> 10 Civ. 1385 (CM), 2010 WL 2218095, at *1-2

(S.D.N.Y. June 2, 2010)("[P]utative class members should be told that they may be

required to participate in the process known as pre-trial discovery, which may involve

answering questions under oath, orally or in writing; they may also be required to testify

at trial.").

Accordingly, the notice will be amended to inform putative class members that

they may be required participate in discovery, including depositions, and to testify at

trial.  It will also inform potential opt-in plaintiffs that they may be required to appear for

trial in Binghamton or Albany, New York.

### iii.  Potential Costs

Insofar as defendants contend that the notice must inform potential plaintiffs that

they may be responsible for costs should plaintiffs fail to prevail in this action, Dkt. No.

91 at 30,[12] such request is denied.  <u>See</u> <u>Whitehorn</u>, 767 F. Supp. 2d at 451 (citing

---

[12]  The Court observes that defendants cite one case in support of their request for language regarding costs that may be bourne by opt-in plaintiffs in the event they do not prevail. Dkt. No. 91 at 30 citing <u>Moore v. Eagle Sanitation, Inc.</u>, 276 F.R.D. 54, 61 (E.D.N.Y. 2011).  However, two of the three cases that <u>Moore</u> cites in support of its one-sentence analysis approving notice regarding costs do not provide such support.  In <u>Sexton v. Franklin First Financial, Ltd.</u>, No 08-cv-4950, 2009 WL 1706535, at *12 (E.D.N.Y. June 16, 2009) the Court rejects the defendants' request for language stating that plaintiffs may be required to may for defendants costs if they do not prevail.  In <u>Romero v. Flaum Appetizing Corp.</u>, No. 07 Civ. 7222 (BSJ), 2009 WL 2591608, at *6 (S.D.N.Y. Aug. 17, 2009), the Court rejected the defendants' request warning the opt-in plaintiffs that they could be liable for the defendants' costs, stating "[d]efendants have provided no relevant support that such language should be included in the notice."  In the final case <u>Moore</u> cites, <u>Bah v. Shoe Mania, Inc.</u>, 2009 WL 1357223, at *4, the Court permitted

Guzman v. VLM, Inc., No 07 Civ. 1126, 2007 WL 2994278, at *8 (E.D.N.Y. Oct. 11, 2007) (rejecting language about potential costs to plaintiffs because such language "may have an in terrorem effect that is disproportionate to the actual likelihood that costs or counterclaim damages will occur in any significant degree) and Shajan 2010 WL 2218095, at *2 ("Defendants will not be permitted to include any statement of position in the notice, and nothing is to be said about paying defendants' costs.")). "Case law supports the addition of language regarding potential plaintiffs' potential liability for costs only where defendants show an intention to bring counterclaims." Boice, 2016 WL 11476964, at *33 (citing Fengler v. Crouse Health Sys., Inc., 634 F. Supp.2d 257, 262 (N.D.N.Y. 2009). Here, it does not appear defendants seek to bring counterclaims. See Dkt. No. 55. Accordingly, defendants' request to include such language is denied.

### iv. Overly Solicitous, One-Sided, Omits Defendants' Position

Defendants make general objections that the proposed notice is "overly solicitous, one-sided, and fails to provide Defendants' position in the lawsuit[.]" Dkt. No. 91 at 29. Defendants do not identify the specific language that they find to be overly solicitous or one-sided. Id.

Insofar as defendants' statement that the notice is one-sided can be read as arguing the notice is improper because it omits defendants' position, courts have held

language in the notice alerting potential plaintiffs that they "may be asked to . . . pay litigation costs." However, it is unclear from either Moore or Bah whether defendants in those cases raised counterclaims. Ultimately, it appears the vast majority of Courts in this Circuit have rejected such language.

30

that inclusion of a simple statement indicating that defendants deny that they violated

the law suffices. See Delaney, 261 F.R.D. at 59 ("[B]ecause the description of

Plaintiffs' FLSA claim is brief, the statement that 'Japonais denies that they violated the

Fair Labor Standards Act' is sufficient."); Shajan, 2010 WL 2218095, at *2 ("Defendants

will not be permitted to include any statement of position in the notice . . . ."). The

current proposed notice states, "TWEC denies liability and asserts that it properly

classified its Store Managers. TWEC further denies that it in any way violated the law

or that it owes any Store Manager additional compensation." Dkt. No. 83-30 at 2.

Defendants fail to explain how this language, which explicitly states that defendants

deny any violation of the law or liability for any additional compensation, does not

suffice to state defendants' position. This statement is reflective of the brief language

reflecting denial of liability and wrongdoing that has been routinely approved by courts

in this Circuit. See Delaney, 261 F.R.D. at 59. Thus, insofar as defendants may

contend that additional language is necessary regarding defendants' position, such

request is denied as the current language suffices.

Insofar as defendants contend that the notice is overly solicitous and one-sided,

to the extent this argument differs from defendants' argument about inclusion of their

position, defendants fail to identify the specific language they believe to be overly

solicitous or one-sided nor do they cite case law indicating that the language selected

by plaintiffs is inappropriate. Accordingly, as the Court has reviewed the proposed

notice and finds that the language is not overly solicitous or one-sided and, with the

Court's additions, properly represents defendants' general position, defendants

objections are denied.

## 2. Court-Authorized Notice and Consent Form

### a. Notice Form

As the Court has the discretion to approve language in the notice and consent form, the Court has reviewed the plaintiffs' proposed notice and concludes that it requires some changes and additions. <u>Delaney</u>, 261 F.R.D. at 59 ("Under the FLSA, the content of the notice is left to the court's discretion.";<u>Gjurovich v. Emmanuel's Marketplace, Inc.</u>, 282 F. Supp.2d 101, 105-106 (S.D.N.Y. 2003) ("No courts have specifically outlined what form court-authorized notice should take, or what provisions notice issued pursuant to § 216(b) should contain."). Attached to this Memorandum-Decision & Order as exhibit A is a the Court-approved notice form and consent form.

Of great significance to the Court is that it is clear to the potential plaintiffs that the Court takes no position in the matter. Although the proposed notice contains such a statement in the last line of the notice and, under the description of lawsuit states, "The Court has not yet decided who will win," the undersigned believes this information should be more prominent and appear earlier on in the notice form. Thus, the undersigned has modified the proposed notice form to make this point on the Court's involvement more clear. <u>See</u> Exh. A.

Next, the memo heading of the proposed notice states "RE: Transworld Store Manager Overtime Litigation." For purposes of clarity, that heading should more properly read "Trans World Corporation Fair Labor Standards Act Conditional Collective

Action, United States District Court Northern District of New York, Spack v. Transworld Entertainment, et al." See Exh. A.

Next, the proposed notice provides that it has been authorized for distribution by United States District Judge Thomas McAvoy. Although Senior Judge McAvoy is the assigned District Judge assigned in this action, Dkt. No. 83-30 at 4, because conditional certification motions are considered to be nondispositive matters, the undersigned magistrate judge has the authority to approve the contents of the conditional notice form. See supra n.1. The notice is therefore modified to reflect the approval of the undersigned. See Exh. A.

Next, the proposed notice must explain to recipients that they *may* be eligible to participate, and that should they choose to opt-in, any continued participation is dependent on a final determination of the Court that they are similarly-situated to the putative collective. The notice is amended to reflect this point. See Exh. A.

Next, the notice form should state that plaintiffs may hire their own attorneys and bring their own case. See, e.g., Lujan v. Cabana Mgmt. Inc., No. 10-CV-755 (ILG), 2011 WL 317984, at *10-11 (E.D.N.Y. Feb. 1, 2011); see generally Arpi v. Sternbach Holdings, LLC, No. 12 Civ. 6764 (KBF), 2012 WL 6200909, at *2 (S.D.N.Y. Dec. 10, 2012) (modifying proposed notice to inform potential opt-in plaintiffs of their "right to independently retain counsel and pursue any claims separately, should they decide not to participate in the collective action."). Accordingly, the Court modifies the proposed notice to contain language informing opt-ins about their right to hire their own attorney, at their own cost. See Exh. A.

Finally, the notice should inform potential plaintiffs that they do not need to take any action if they do not want to join the lawsuit. Thus, the Court modifies the consent form to more clearly reflect this information. See Exh. A.

### b. Consent Form

The Court approves the proposed Consent to Join Form provided by plaintiffs, Dkt. No. 83-30 at 6, with minor modifications. For the reasons discussed infra, references to join by completing and submitting a consent form by e-mail, fax, or website must be removed. Further, the postmark date must reflect the notice period set forth within the "wherefore clause" of this Memorandum-Decision & Order, infra. See Exh. A. With those changes, plaintiffs may proceed in distributing the proposed consent form.

### 3. Distribution of Notice & Consent Forms

Plaintiffs request permission to distribute notice by e-mail, "[i]n addition to U.S. Mail." Dkt. No. 83-2 at 11. Further, they request permission to maintain a "secure interactive website for the purpose of providing notice and facilitating SMs' ability to complete the consent to join process." Id. at 11. Finally, they seek a Court order permitting posting of the notice and consent form in a conspicuous location all of defendants' stores. Id. at 11-12. Defendants do not address plaintiffs' specific requests. Dkt. Nos. 91, 103.

### a. Notice by E-mail and U.S. Mail

Plaintiffs request permission to distribute notice by e-mail, "[i]n addition to U.S. Mail." Dkt. No. 83-2 at 11. First, the Court denies plaintiffs' request to distribute notice by e-mail. Plaintiffs provide that courts "routinely hold that e-mail is an appropriate method for distributing notice in addition to U.S. Mail," Dkt. No. 83-2 at 11 (citing Hernandez v. Merrill Lynch & Co., Inc., 11 Civ. 8472 (KBF), 2012 U.S. Dist LEXIS 49822, at *22 (S.D.N.Y. Apr. 6, 2012); Pippins v. KPMG LLP, 11 Civ. 0377 (CM/JLC), 2012 U.S. Dist. LEXIS 949, at *41, 2012 WL 19379 (S.D.N.Y. Jan. 3, 2012). Courts in this Circuit have expressed concern about e-mail notice, as

> electronic communication inherently has the potential to be copied and forwarded to other people via the internet with commentary that could distort the notice approved by the Court. Electronic mail heightens the risk that the communication will be reproduced to large numbers of people who could compromise the integrity of the notice process. In addition, email messages could be forwarded to nonclass members and posted to internet sites with great ease.

Sharma v. Burberry Ltd., 52 F. Supp.3d 443, 463 (E.D.N.Y. Sept. 4, 2014) (quoting Karvaly v. eBay, Inc., 245 F.R.D. 71, 91 (E.D.N.Y. 2007) (additional citation omitted). Although these cases appear to involve situations where the plaintiffs were seeking notice solely by U.S. mail, and plaintiffs here seek to send notice both by U.S. mail and by e-mail, this duplicity of efforts does not resolve the Court's concern that e-mail notice may cause, such as the distortion of the notice and notice being inappropriately or advertently distributed to non class members. Further, plaintiffs have made no showing that e-mail is necessary as they have not shown that distribution of the notice through

U.S. mail has been unsuccessful for a significant number of potential opt-in plaintiffs. Accordingly, plaintiffs' request to distribute notice by e-mail, in addition to U.S. mail, is denied.

### b.  Secure Interactive Website

Insofar as plaintiffs request permission to use a "secure interactive website for the purpose of providing notice and facilitating SMs' ability to complete the consent to join process," the Court grants this request in part.  Dkt. No. 83-2 at 11-12. Plaintiffs may use a website as an additional means of providing notice to potential plaintiffs, but any such website must contain only the notice and consent forms approved by the Court.  Insofar as plaintiffs request that the website be permitted as a means of allowing potential opt-in plaintiffs to submit consent forms, that request is denied for the reasons discussed above with e-mail notice.  All consent forms must be returned by U.S. Mail. See generally Sharma, 52 F. Supp. 3d 443, 464 (denying website posting of notice).

### c.  Workplace Posting of Notice

Insofar as plaintiffs seek the Court to order defendants to post a copy of the notice "in a conspicuous location in all of its stores for the entire notice period," this request is granted.  Dkt. No. 83-2 at 11.  The Court finds that this request is appropriate and one that is "routinely approved" by courts in this Circuit.  See, e.g., Whitehorn, 767 F. Supp.2d at 449.  Defendants present no argument to the contrary, and the Court can anticipate no significant burden to defendants by this requirement.  Accordingly, the

Court authorizes the posting of the Notice and Consent form in a common, nonpublic, easily-visible employee area of each of defendants' stores for the entirety of the notice period.

### d. Reminder Notice

Plaintiffs' request to send potential plaintiffs a reminder by U.S. mail and by e-mail at the half-way point of the notice period is granted insofar as plaintiffs may send a reminder notice through U.S. mail, and denied insofar as it requests to send a reminder notice through e-mail, for the reasons discussed <u>supra</u>. Thus, references to submitting the consent form by website, fax, or e-mail must be omitted. The proposed reminder form, dkt. no. 83-30 at 8, as modified, is approved. The plaintiffs may not send more than one reminder through U.S. mail, and the reminder notices must be sent at the half-way point of the notice period. Plaintiffs will bear full cost of sending a reminder notice.

### IV. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's Motion to Conditionally Certify as a Collective Action pursuant to FLSA § 216(b), Dkt. No. 83, is **GRANTED in part**:

(1) plaintiffs may conditionally certify their misclassification claim as to Store Managers,

(2) plaintiffs are permitted to set up a website, within the confines specified herein;

(3) plaintiffs are granted permission to send one reminder notice by U.S. mail, within the confines specified herein; (4) defendants are ordered to post the Court-approved notice

form in a conspicuous location in each of their stores for the entire duration of the notice period; and it is further

ORDERED, that plaintiff's Motion to Conditionally Certify as a Collective Action pursuant to FLSA § 216(b), Dkt. No. 83, is **DENIED in part**:
(1) plaintiffs' request to certify their off-the-clock claim is denied; (2) plaintiffs' request to allow potential opt-in plaintiffs to submit their consent to join forms by e-mail, website, or fax is denied; (3) plaintiffs' request to send a reminder notice by e-mail is denied; and it is further

ORDERED, that plaintiffs' are permitted to distribute, by the means specified herein, the Court-authorized notice form, attached to this Memorandum-Decision and Order as Exhibit A, and it is further

ORDERED, that the proposed consent form, Dkt. No. 83-30 at 6, is accepted, with the edits specified herein; and it is further

ORDERED, that the proposed reminder form, Dkt. No. 83-30 at 8, with the edits specified herein, is accepted; and it is further

ORDERED, that the Court will consider as potential plaintiffs all those who were employed as SMs for at least one week from April 1, 2014, to the date of this Memorandum-Decision & Order; and it is further

ORDERED, that defendants are ordered to provide to plaintiffs, within twenty-one (21) days of the date of this Memorandum-Decision & Order – by February 5, 2019 – the names, work locations, dates of employment, telephone numbers, work e-mail addresses, and last known addresses of all current and former Store Managers who

worked at any of the TWEC locations in the United States for at least one week from April 1, 2014, to the date of this Memorandum-Decision & Order; and it is further

**ORDERED**, that the notice period is SIXTY (60) days, beginning on February 5, 2019 – the date by which defendants' must turn over to plaintiffs the information specified above – and ending on April 6, 2019;

**ORDERED**, that the Clerk of the Court serve this Memorandum-Decision & Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: January 15, 2019
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge