**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CAROL SPACK, TABITHA SCHMIDT, Individually and on behalf of all others similarly situated, as Collective representative,

Plaintiffs,

v.

TRANS WORLD ENTERTAINMENT CORPORATION and RECORD TOWN, INC.:

Defendants.

Case No. 1:17-cv-1335-TJM-CFH

NATASHA ROPER, Individually and On behalf of all others similarly situated, as Collective representative,

Plaintiffs,

v.

TRANS WORLD ENTERTAINMENT CORPORATION and RECORD TOWN, INC.:

Defendants.

Case No. 1:17-cv-00553-TJM-CFH

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS**

Stephan T. Mashel, Esquire
Amy C. Blanchfield, Esquire
MASHEL LAW, L.L.C.
500 Campus Drive, Suite 303
Morganville, New Jersey 07751

ATTORNEYS FOR PLAINTIFFS

**TABLE OF CONTENTS**

TABLE OF CONTENTS ....... i-iii

TABLE OF AUTHORITIES ....... iv-vi

I. PRELIMINARY STATEMENT ....... 1

II. PROCEDURAL HISTORY AND STATEMENT OF FACTS ....... 2-8

III. LEGAL ARGUMENT ....... 8-25

POINT I: PRELIMINARY APPROVAL IS APPROPRIATE PURSUANT TO RULE 23(e) BECAUSE THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE ....... 8-16

A. There Is A Strong Judicial Policy In Favor of Settlements, Especially In the Class Action Context and Preliminary Approval Is Warranted So Long As There Is "Probable Cause" to Substantiate Settlement to the Class ....... 8-9

B. The Proposed Settlement Is Fair, Adequate and Reasonable ....... 9-16

1. *The Proposed Settlement is Procedurally Fair Because It Was Achieved Through Arms-Length Negotiations By The Attorneys of Record* ....... 10-11

2. *The Proposed Settlement Is Substantively Fair* ....... 11-16

*i.* *Litigation Through Trial Would Be Extremely Complex, Costly and Long* ....... 11-12

ii. *The Reaction of the Class* ....... 12

*iii.* *Plaintiffs and Their Attorneys Have Sufficient Information to Resolve the Case Responsibly* ....... 13

*iv.* *Plaintiffs Would Face Significant Risks If The Case Proceeded* ....... 13-14

*v.* *Establishing a Class and Maintaining It Through Trial Would Be Difficult* ....... 14-15

vi. *Defendants' Ability to Withstand a Greater Judgment Is A Significant Concern* ........................................15-16

vii. *Given TWEC's Apparent Lack of Solvency and the Attendant Risks of Litigation, the Settlement Amount is Substantial* ...............................................................16

POINT II: THE PROPOSED RULE 23 NEW JERSEY AND PENNSYLVANIA CLASS MEETS THE LEGAL STANDARD FOR CLASS CERTIFICATION ....................................................................................16-21

A. The SM and SAM Class Adequately Meet the Numerosity Component ..............................................................17-18

B. The SMs and the SAMs Class Share Common Questions of Law and Fact ........................................................18-19

C. The SMs and the SAMs Satisfy the Typicality Requirement ..................................................................................19

D. Named Plaintiffs and Mashel Law Will Adequately Represent the SMs and SAMs ..............................................19-20

E. Common Questions of Fact and Law Predominate in the Case at Bar ..........................................................................20

F. A Class Action Is Superior ...........................................................................21

G. The Settlement Complies with the Requirements of Rule 23(e)(2) ..........................................................................21

POINT III: PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL ...............................................................................................22

POINT IV: THE PROPOSED NOTICE IS APPROPRIATE ..........................................22-23

POINT V: THE FLSA SETTLEMENT SHOULD BE APPROVED ...............................23-24

A. The Proposed Settlement Is Fair and Reasonable ......................................23-24

POINT VI: THE SERVICE AWARDS ARE REASONABLE AND APPROPRIATE ........................................................................................................24

POINT VII: THE COURT SHOULD PRELIMINARILY APPROVE CLASS COUNSEL'S FEES AND COSTS REQUEST ......................................................25

IV. CONCLUSION ....................................................................................................25

# TABLE OF AUTHORITIES

Statutes

29 *U.S.C.* § 216(b) ........................................................................1, 3

Federal Rules of Civil Procedure

*Fed. R. Civ. P.* 23........................................................................9, 20, 22

Cases

*Asare v. Change Group of N.Y., Inc.*,
No. 12-cv-3371 (S.D.N.Y. Nov. 18, 2013) ........................................17

*Becher v. Long Island Lighting Co.*,
64 F. Supp. 2d 174 (E.D.N.Y. 1999) ........................................10

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ........................................25

*Capsolas v. Pasta Res., Inc.*,
No. 10 CV 5595, 2012 U.S. Dist. LEXIS 144651 (E.D.N.Y. Oct. 5, 2012) ....................10

*Catholic Healthcare W. v. United States Foodservice, Inc.*,
729 F.3d 108 (2d Cir. 2013) ........................................17

*Cheeks v. Freeport Pancake House, Inc.*,
796 F.3d 199 (2d Cir. 2015) ........................................23, 24

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ........................................11

*Clement v. Am. Honda Fin. Corp.*,
176 F.R.D. 15 (D. Conn. 1997) ........................................10

*Cnty. of Suffolk v. Long Island Lighting Co.*,
710 F. Supp. 1422 (E.D.N.Y. 1989) ........................................16

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) ........................................17

*Cullen v. Whitman Med. Corp.*,
197 F.R.D. 136 (E.D. Pa. 2000) ........................................24

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ....................................................................10,12

*Damassia v. Duan Reade, Inc.*,
250 F.R.D. 152 (S.D.N.Y. 2008) ....................................................................18

*Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.*,
27 F. Supp. 3d 313 (E.D.N.Y. 2014) ....................................................................15

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010) ....................................................................8

*Eisne v. Carlisle & Jacquelin*,
391 F.2d 555 (2d Cir. 1968) ....................................................................20

*Frank v. Eastman Kodak Co*.,
228 F.R.D. 174 (W.D.N.Y. 2005) ....................................................................16

*Glatt v Fox Searchlight Pictures, Inc*.,
293 F.R.D. 516 (S.D.N.Y. June 11, 2013) ....................................................................21

*Goldberger v. Integrated Res., Inc*.,
209 F.3d 43 (2d Cir. 2000) ....................................................................11

*Joel A. v. Giuliani*,
218 F.3d 132 (2d Cir. 2000) ....................................................................9

*In re Austrian & German Bank Holocaust Litig*.,
80 F.Supp. 2d 164 (S.D.N.Y. 2000) ....................................................................12, 13

*In re EVCI Career Colls. Holding Corp. Sec. Litig*.,
No. 05 Civ. 10240 (S.D.N.Y. July 27, 2007) ....................................................................10

*In re Penthouse Executive Club Compensation Litig*.,
2014 WL 185628 (S.D.N.Y. Jan. 14, 2014) ....................................................................23

*In re Traffic Executive Ass'n*,
627 F.2d 631 (2d Cir. 1980) ....................................................................9

*Le v. SITA Info. Networking Computing USA, Inc*.,
2008 WL 724155 (E.D.N.Y. Mar. 13, 2008) ....................................................................23

*Martens v. Smith Barney, Inc*.,
181 F.R.D. 243 (S.D.N.Y. 1998) ....................................................................19

*Maywalt v. Parker & Parsley Petroleum Co.*,
67 F.3d 1072 (2d Cir. 1998) ....................................................................9

*Moore v. Paine Webber, Inc.*,
306 F.3d 1247 (2d Cir. 2002) ....................................................................20

*Newman v. Stein,*
464 F.2d 689 (2d Cir. 1972) ....................................................................16

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ....................................................................9

*Revco Sec. Litigation, Arsam Co. v. Salomon Bros. Inc.*,
1992 U.S. Dist. LEXIS 7852 (N.D. Ohio May 6, 1992) ..................................24

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993) ....................................................................19

*Sakiko Fujiwara v. Sushi Yasuda, Ltd.*,
58 F.Supp. 3d 424 (S.D.N.Y. 2014) ..........................................................13

*Spicer v. Pier Sixty, LLC*,
269 F.R.D. 321 (S.D.N.Y. 2010) ..............................................................20

*Van Vraken v. Atlantic Richfield Co.*,
901 F.Supp. 294 (N.D. Cal. 1995) ............................................................24

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ................................................................................18

*Wal-Mart Stores, Inc. v. Visa USA, Inc.*,
396 F.2d 96 (2d Cir. 2005) ..................................................8, 9, 10, 18

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982) ......................................................................9

*Wolinksy v. Scholastic, Inc.*,
900 F.Supp. 332 (S.D.N.Y. 2012) ............................................................23

*Yap v. Sumitomo Corp. of America*,
1991 U.S. Dist. LEXIS 2124 (S.D.N.Y. Feb. 22, 1991) ..................................24

<u>Other Sources</u>

NEWBERG § 11.25 ..............................................................................9, 17

## PRELIMINARY STATEMENT

After attending a settlement conference with the Honorable Christian F. Hummel, U.S.M.J. and several arms-length settlement discussions, the parties to this case reached a preliminary settlement in which Defendants Trans World Entertainment Corp. (TWEC) and Record Town, Inc. (collectively referred to as "the TWEC Defendants" or "Defendants") agrees to pay to Plaintiffs and the putative collective and class a gross sum of $400,000.00 to settle all claims including, but not limited to, those brought for alleged unpaid overtime wages under the federal Fair Labor Standards Act (FLSA) and state class action claims brought under New Jersey's Wage and Hour Law (NJWHL) and the Pennsylvania Minimum Wage Act (PMWA). The $400,000.00 settlement amount will adequately settle these claims. Accordingly, Plaintiffs make this unopposed motion to obtain Court approval of this preliminary settlement.

Specifically, Plaintiffs make this unopposed motion seeking entry of an Order providing the following relief: (1) certifying a settlement class under Federal Rule of Civil Procedure 23(a) and (b)(3) on a provisional basis only; (2) final certification of a FLSA collective action settlement class under 29 U.S.C. § 216(b) on a provisional basis only; (3) preliminary approval of the settlement of the Rule 23 class claims; and (4) preliminary approval of the settlement of the FLSA class claims.

The parties have already expended a significant amount of resources on this litigation and, accordingly, fully understand the risks associated with this litigation, including the TWEC Defendants' precarious and uncertain financial situation. In the interest of judicial economy, and because the proposed settlement is fair, reasonable and adequate, Plaintiffs respectfully request that the Court order provisional certification of the collective action under 29 U.S.C. § 216(b) for settlement purposes, appoint Mashel Law, L.L.C. as class counsel for settlement purposes, and grant preliminary approval of the class settlement, class notice, settlement procedure, and the parties' Settlement Agreement.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

### A. For Over Three Years, the Parties Have Vigorously Litigated this Class and Collective Action.

On April 20, 2017, Plaintiff Carol Spack filed a three-count class and collective action in the United States District of New Jersey under Case No. 3:17-cv-02687-BRM-LHG on behalf of herself and all similarly situated current and former employees of TWEC. ECF No. 1, 1:17-cv-1335. The Complaint asserts one count for TWEC's alleged willful violation of the FLSA, one count for alleged violations of the NJWHL and one count for alleged violations of PMWA. ECF No. 1, 1:17-cv-1335. The collective action brought under the FLSA proposes two, separate collectives, one for the Store Managers (SMs) and one for the Senior Assistant Managers (SAMs). For the SMs, the collective includes the Named Plaintiffs, those individuals who have filed a timely consent to participate in the Litigation and individuals (other than the Named Plaintiffs and Opt-In Plaintiffs) who were employed by TWEC (or a related entity) as a SM for at least one week between April 1, 2014 through Preliminary Approval (excluding SMs who worked exclusively in California) who did not receive notice when the Court conditionally certified a collective of SMs. For the SAMs, the collective includes the Named Plaintiffs, any individual who has filed a timely consent to participate in this action, and individuals (other than the Named Plaintiffs and Opt-In Plaintiffs) who were employed by TWEC (or a related entity) as a SAM for at least one week between April 1, 2014 through Preliminary Approval. SAMs who worked exclusively in California during this time period or who worked exclusively in Pennsylvania after July 15, 2017 are expressly excluded.:

With respect to the SMs, Plaintiffs allege TWEC misclassified the SMs as exempt from receiving overtime and failed to pay them for all time worked. With respect to the SAMs, Plaintiffs allege TWEC violated wage and hour laws by miscalculating their overtime and failing to pay SAMs for all hours worked. ECF No. 1, 1:17-cv-1335. The separate subclasses under NJWHL and PMWA

consists of those individuals (other than the Named Plaintiffs and Opt-In Plaintiffs) who were employed by TWEC (or a related entity) as a SM or a SAM for a period of at least one (1) week during the Relevant Period in either New Jersey or Pennsylvania. SAMs who worked exclusively in Pennsylvania after July 15, 2017 are expressly excluded.

On May 19, 2017, Plaintiff Roper filed a Complaint in the Northern District of New York alleging similar FLSA claims. ECF No. 1, 1:17-cv-0553.On June 14, 2017, TWEC filed a motion to transfer the Spack Action to the Northern District of New York. ECF No. 8, 1:17-cv-1335. Spack filed an opposition and filed a cross-motion to amend her Complaint to include SMs as part of the proposed class under the PMWA, to add an additional Plaintiff, Tabitha Schmidt and add unpaid working "off the clock" claims. The Court granted TWEC's motion to transfer. ECF No. 37, 1:17-cv-1335. On May 7, 2018, the Court filed an order consolidating the Spack and Roper matters. ECF No. 85, 1:17-cv-1335.

**B. The Parties Conducted Extensive Discovery.**

The parties participated in extensive discovery during the pendency of this action including, but not limited to, the exchange of thousands of documents consisting of payroll records, policies and procedures, personnel files and ESI Discovery. The parties have also taken the depositions of Plaintiffs Carol Spack, Tabitha Schmidt, and Natasha Roper (collectively referred to as the "Named Plaintiffs"), a fact witness and two corporate designee depositions. Plaintiffs' attorneys have also interviewed many non-party witnesses and obtained Declarations from them which were later filed with the Court. Defendants' counsel also interviewed numerous SMs and obtained dozens of declarations that were filed in opposition to Plaintiffs' motion for conditional certification of that collective. For the SM claims, the parties have also engaged in second-stage discovery, exchanging numerous documents and written discovery responses for 40 SM Discovery Opt-In Plaintiffs.

**C. Named Plaintiffs Have Been Actively Involved Throughout This Litigation.**

Named Plaintiffs Spack, Schmidt and Roper have responded to discovery requests, extensively prepared for the taking of their depositions, had their depositions taken, and assisted their attorneys in identifying potential witnesses and by reviewing thousands of documents produced by the TWEC in this matter. Overall, the Named Plaintiffs have provided counsel with invaluable insight in this case.

The parties have also selected 40 SM Discovery Opt-In Plaintiffs to participate in discovery, including answering interrogatories, providing responsive documents and assisting counsel in litigating this matter. The Discovery Opt-In Plaintiffs have been an asset to Class Counsel.

**D. The Court Granted Plaintiffs' Motion for Conditional Certification for SMs.**

On January 15, 2019, the Court granted Plaintiffs' Motion for Conditional Certification pursuant to 29 U.S.C. §216(b) for the SMs. To date, 218 SMs have joined this case.

**E. On December 23, 2019, TWEC Filed Its 10-Q Stating It Had "Substantial Doubt" It Will Be Able to Sustain Operations For Another Year.**

On December 23, 2019, TWEC released its third-quarter Security and Exchange Commission Form 10-Q regulatory filing.[1] See Exhibit A annexed to the Declaration of Stephan T. Mashel, Esquire, ("Mashel Dec."). TWEC "reported "incurred net losses of $39.1 million and $31.7 million for the thirty-nine weeks ended November 2, 2019 and November 3, 2018." Id. at p. 8. TWEC also advised that it expected "to incur net losses in the foreseeable future." Id. "Based on its recurring losses from operations, expectation of continuing operating losses for the foreseeable future, and uncertainty with respect to any available future funding, as well as the completion of other strategic alternatives, [TWEC] has concluded that there is **substantial doubt** about [TWEC's] ability to continue..." Id.

[1] Trans Word Entertainment is a publicly traded corporation which is listed on the NASDAQ under the symbol TWMC.

**F. On January 23, 2020, TWEC Announced It Was Selling Its FYE Stores and Other Assets to Sunrise Records For Only $10 Million.**

On January 23, 2020, TWEC agreed to sell the FYE retail, video and collectibles retail business to Sunrise Records and Entertainment Ltd. ("Sunrise") for $10 million. See Exhibit B, p. 17. It was announced that the stores will be rebranded as Sunrise and substantially all of the FYE employees will be retained. Id. at p. 35. The $10 million price was subject to net inventory and other adjustments, plus the assumption of certain liabilities. Id. at p. 13. As is material here, TWEC maintained liability for employment-related causes of action through the date of closing, with the buyer assuming any such liability from the date of closing onward. Id. at pp. 41-42

All of the proceeds from the transaction would be used to pay outstanding debts and satisfy other unassumed liabilities. See Exhibit C, TWEC's January 23, 2020 Press Release attached to. The assets Sunrise received included net inventory worth approximately $40 million. See Exhibit B, at p. 41-42. If the value of the inventory is less or more, the purchase price would be adjusted. Id. The Purchase Agreement specifically stated that TWEC would indemnify Sunrise for any employment claims arising prior to the date of closing, including this lawsuit. Id. at pp. 41-42.

The deal left TWEC with just one business, a digital marketplace firm called Etailz that is currently losing money. See Exhibit A, p. 24. Etailz generates substantially all of its revenue through Amazon Marketplace. Id. Based on the recurring losses at Etailz and the expectation of continued losses, especially given the current pandemic, Plaintiffs are concerned that TWEC will not continue even after the sale to Sunrise.

**G. On February 26, 2020, the Parties Conducted Settlement Negotiations During a Settlement Conference with the Honorable Christian F. Hummel.**

On February 26, 2020, the parties attended a settlement conference with the Honorable Christian F. Hummel held at the James T. Foley U.S. Courthouse located in Albany, New York. In

preparation for the settlement conference, each party prepared and submitted statements to Judge Hummel, including a detailed analysis of the claims and defenses in this case. Although the settlement conference was unsuccessful, the parties continued to engage in arms-length negotiations. In March 2020, the parties reached an agreement in principle, settling both the SM and SAM claims for the aggregate sum of $400,000.00. Thereafter, the parties finalized the terms of the Settlement and signed the formal Settlement Agreement.

**H. Mashel Law, L.L.C. Has Extensive Knowledge in Litigating Wage and Hour Cases, Including Class Actions.**

Mashel Law, L.L.C. is the law firm representing the Named Plaintiffs and the Opt-In Plaintiffs in this action. Mashel Law is experienced in similar wage and hour violations as those that are present here. Stephan T. Mashel, Esquire is the principal attorney at Mashel Law. He has over thirty-three (33) years of experience as a plaintiff's litigation attorney in good standing in the State of New Jersey. Mr. Mashel has extensive experience litigating employment cases and has a growing practice involving class action claims. For example, Mr. Mashel was one of the lead plaintiff attorneys in Mittl v. Lowe's Home Centers, LLC, Case No. 3:15-cv-06886-BRM-DEA, a New Jersey class action in the United States District Court of the District of New Jersey which alleged, *inter. alia,* that a class of service installers had been misclassified as independent contractors in violation of the New Jersey Construction Industry Independent Contractor Act, N.J.S.A., 34:20-1, *et seq* . Mashel Law also successfully litigated Carter, et al. v. Bed Bath & Beyond, Inc., MID-L-6178-16, which alleged similar FLSA claims. Mashel Law is also counsel of record for the plaintiffs in Sanchez v. Santander Bank, N.A., Case No. 3:17-cv-05775-PGS-DEA, a FLSA class/collective action in the District of New Jersey.

**I. The Settlement Fund and Eligible Employees.**

The Settlement Agreement establishes a maximum settlement amount of $400,000.00 (the "Settlement Fund") for which SM and SAM collective and class members ("Participating Class

Members") may claim settlement awards. The Settlement Fund covers any Court-approved Service Awards, attorneys' fees and expenses, Settlement Administrator's fees and Participating Class Members awards. The $400,000.00 Settlement Fund, less the above detailed expenses and fees, will be paid out by the Settlement Administrator to the individual SMs and SAMs who submit a valid and timely claim form. Each individual Opt-In Plaintiff will not be required to submit any Claim Form but may opt out of the settlement. Pursuant to the Settlement Agreement, Plaintiffs' counsel will seek an award of attorneys' fees of 33 1/3 % of the gross Settlement Fund plus an application for reimbursement of expenses to Plaintiffs' counsel not to exceed $40,000.00, and a Class representative incentive fee award of $5,000 for each of the three Named Plaintiffs, as well as a Service Award of $250.00 for the forty (40) SM Discovery Opt-In Plaintiffs that participated in written discovery.

The Opt-In Plaintiffs include the Named Plaintiffs and those individuals who have filed a timely consent to participate in the Litigation. For the SMs, all FLSA consent forms filed with the Court will be considered timely so long as they were signed between April 1, 2014 and April 1, 2020 (the "Relevant Time Period") and each individual was employed by TWEC, or a related entity, as a SM for at least one week during the Relevant Time Period. For the SAMs, the FLSA consent forms will be deemed timely if they were filed with the Court within three years of their last date of employment at TWEC, or a related entity.

The Putative Collective Members include those individuals, other than Named Plaintiffs and Opt-In Plaintiffs, who were employed by TWEC, or a related entity, as a SAM for at least one week between April 1, 2014 and the present; except for SAMs who worked exclusively in California during this time period or who worked exclusively in Pennsylvania after July 15, 2017 who are expressly excluded because they were classified as non-exempt and paid hourly (as opposed to the other SAMs who were classified as salaried non-exempt and had their overtime calculated using the FWW). The

Putative Class Members include those individuals, other than the Named Plaintiffs and Opt-In Plaintiffs, who were employed by TWEC, or a related entity, as a SM or a SAM for a period of at least one week during the Relevant Time Period in either New Jersey or Pennsylvania. SAMs who worked exclusively in Pennsylvania after July 15, 2017 shall not be included in any calculation for settlement payments because they were reclassified as hourly and paid accordingly from that date on.

**J. Distribution of Payments to Settlement Class Members.**

Payments to Participating Class Members will be made from the Net Settlement Fund. Each Participating Class Member shall be paid out of the QSF with each such individual receiving a prorated portion of the Net Settlement Fund. The prorated portion of the Net Settlement Fund to which each Class Member will be eligible shall be calculated based on the number of weeks worked by each Class Member during the Relevant Time Period. To calculate the proportionate share for which each Class Member is eligible: (a) add all weeks worked by all Class Members during the Relevant Time Period to obtain the "Total Denominator;" (b) divide the number of weeks worked for each individual Class Member by the Total Denominator to obtain each individual's "Percentage of the Net Settlement Fund;" and (c) multiply each individual's Percentage of the Net Settlement Fund by the Net Settlement Fund to determine each Class Member's "Settlement Award." The selected Class Administrator will provide its calculations to counsel within three business days after completing the calculations.

## LEGAL ARGUMENT

### I. PRELIMINARY APPROVAL IS APPROPRIATE PURSUANT TO RULE 23(e) BECAUSE THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE.

**A. There Is A Strong Judicial Policy in Favor of Settlements, Especially In the Class Action Context and Preliminary Approval Is Warranted So Long As There Is "Probable Cause" to Substantiate Settlement to the Class.**

There is a "strong judicial policy in favor of settlements, particularly in the class action context." Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.2d 96, 116 (2d Cir. 2005); Ehrheart v. Verizon

Wireless, 609 F.3d 590, 594-595 (3d Cir. 2010) (finding the law favors compromise and settlement of collective action and class action lawsuits); Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation."); Speed Shore Corp. v. Denda, 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation."). The approval of a proposed class action settlement is a matter of discretion for the trial court. Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1079 (2d Cir. 1998).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. NEWBERG § 11.25. To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." In re Traffic Executive Ass'n, 627 F.2d 631, 634 (2d Cir. 1980); NEWBERG § 11.25 ("If preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness…and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).

**B. The Proposed Settlement Is Fair, Adequate and Reasonable.**

To determine whether a settlement should be granted approval under Rule 23(e), the Court must determine that the proposed settlement is "fair, adequate, and reasonable, and not a product of collusion." Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000) (citations omitted); see also Fed. R. Civ. P. 23(e). Approval of a class action settlement generally involves a two-step process. First, the court preliminarily approves the proposed settlement by evaluating the written submissions and informal presentation of the settling parties and the negotiating process leading to the settlement. Wal-

Mart Stores, 396 F.3d at 116. Second, the court holds a fairness hearing to "determine whether the settlement's terms are fair, adequate, and reasonable[.]" Capsolas v. Pasta Res., Inc., No. 10 CV 5595, 2012 U.S. Dist. LEXIS 144651, at *4 (E.D.N.Y. Oct. 5, 2012).

1. *The Proposed Settlement is Procedurally Fair Because It Was Achieved Through Arms-Length Negotiations by The Attorneys of Record.*

In determining whether to approve a settlement, the court must determine whether the settlement was procedurally fair. In doing so, the court looks at whether the settlement was "achieved through arms-length negotiations by counsel with the experience and ability to effectively represent the class's interests." Becher v. Long Island Lighting Co., 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999) (citing Weinberger v. Kendrick, 698 F.2d 61, 74 (2d. Cir. 1982); see also D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001) (noting that the district court must "determine a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms"). In reviewing a proposed settlement, the court has the "fiduciary responsibility of ensuring that the settlement is...not a product of collusion, and that the class members' interests [were] represented adequately." Clement v. Am. Honda Fin. Corp., 176 F.R.D. 15, 29 (D. Conn. 1997). A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." Wal-Mart Stores, 396 F.3d at 116; see also D'Amato, 236 F.3d at 85. "Absent fraud or collusion, [courts' should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." In re EVCI Career Colls. Holding Corp. Sec. Litig., No. 05 Civ. 10240, at *4 (S.D.N.Y. July 27, 2007).

Here, the proposed settlement was reached only after Plaintiffs' attorneys conducted a thorough investigation, evaluated the claims and defenses, and negotiated extensively with counsel for Defendants. Throughout this three-year litigation, Plaintiffs' attorneys have obtained and reviewed thousands of pages of payroll records, timekeeping records, policies and procedures, and emails

produced by the Defendants. Plaintiffs' attorneys have interviewed several non-party witnesses and have conducted two corporate designee depositions and a fact witness deposition. Plaintiffs' attorneys adequately evaluated the strengths and weaknesses of the claims and defenses. On February 26, 2020, the parties participated in a settlement conference with the Court. Even though the settlement conference was unsuccessful, the parties continued to engage in extensive arms-length negotiations after the conference until a proposed settlement was reached. Therefore, Plaintiffs submit that the process of reaching this proposed settlement was procedurally fair.

2. *The Proposed Settlement Is Substantively Fair.*

In determining whether to preliminarily approve the proposed settlement, the Court must determine whether the settlement is substantively fair. In doing so, the Court evaluates the nine factors set out by the Second Circuit in City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974), abrogated on other grounds, Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000)). These factors include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the Settlement Fund in light of the best possible recovery; and (9) the range of reasonableness of the Settlement Fund to a possible recovery in light of all the attendant risks of litigation. City of Detroit v. Grinnell Corp., 495 F.2d at 463.

*i. Litigation Through Trial Would Be Extremely Complex, Costly and Long.*

By reaching a favorable settlement before additional discovery takes place, dispositive motions or trial, the parties seek to avoid significant expense and delay to ensure the class receives recovery. As is the case here, "[m]ost class actions are inherently complex and settlement avoids the costs, delays